UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                     )<br>)<br>FRANCIS P. SALEMME      )    CR. NO. 04-10323-RGS<br>) | |

**GOVERNMENT'S MOTION FOR DETENTION**

Pursuant to 18 U.S.C. §3142(f)(1)(D), (f)(2)(A), and (f)(2)(B), the government hereby requests that defendant Francis P. Salemme be detained pending trial in this case.

As set forth in the attached affidavit ("AFF") from DEA Special Agent Daniel Doherty (Exhibit A)[1], defendant Salemme has been a prominent criminal in the Boston area for decades. On two prior occasions in 1969 and 1995, Salemme fled Massachusetts to avoid prosecution. After serving fifteen years in state prison based upon his participation in the savage car bombing of attorney John Fitzgerald, Salemme was released from custody in 1988 and promptly resumed his life of crime and became Boss of the New England Family of La Cosa Nostra. Most recently, Salemme pled guilty to all counts (including RICO and numerous extortion charges) of the indictment in United States v. Francis P. Salemme, et al., Crim. No. 94-10287-MLW.

---

[1] Of course, it is well settled that the government may proceed by way of proffer at a detention hearing and that the rules of evidence, including the hearsay rules, do not apply. See, United States v. Acevedo-Ramos, 755 F.2d 203, 208 (1st Cir. 1985), and Federal Rules of Evidence, Rule 1101(d)(3).

II. ARGUMENT

Defendant Salemme should be detained because he is both a risk of flight and a danger to the community in that he is likely to obstruct justice now that he is facing new federal charges. In determining whether Salemme should be detained, the following factors must be considered under 18 U.S.C. § 3142(g):

**Factors to be considered.**- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning -

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including -
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

As will be discussed more fully below, all of the aforementioned factors militate in favor of detaining Salemme.

A. <u>Risk of Flight</u>

The Government bears the burden of proving only by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's presence as required. <u>United States v. Patriarca</u>, 948 F.2d 789, 793 (1st Cir. 1991); <u>United States v. Jackson</u>, 823 F. 2d 4, 5 (2d Cir. 1987).

There are numerous facts which clearly indicate that Salemme will ultimately flee to avoid prosecution if he is not detained:

1) Salemme became a fugitive in 1969 once he and Stephen Flemmi were indicted by a state grand jury for their involvement in the bombing of attorney John Fitzgerald. He was not arrested until 1973 when he was captured in New York City (AFF 2, 5-6).

2) Salemme became a fugitive in 1995 once arrest warrants were issued in the case litigated before Judge Wolf (<u>United States v. Francis P. Salemme, et al.</u>, Crim. No. 94-10287-MLW). He was not arrested until eight months later when he was captured in Florida (AFF 2, 5).

3) If convicted, Salemme faces ten years in prison based upon the applicable U.S. Sentencing Guidelines (U.S.S.G. §2J1.1(c) and U.S.S.G. §2X3.1) and relevant First Circuit precedent (<u>United States v. John Connolly</u>, 341 F.3d 16 (1st Cir. 2003). Consequently, Salemme, who is 71 years old, may well choose to flee rather than risk being incarcerated for the rest

of his life.

   B.   Danger to Community

   The government must establish dangerousness by clear and convincing evidence. 18 U.S.C. § 3142(f). As the First Circuit discussed in an opinion written by former Chief Judge Breyer, this clear and convincing standard can be satisfied with hearsay evidence alone. Acevedo-Ramos, 755 F.2d at 208.

   In determining dangerousness and whether defendant Salemme will abide by any Court orders regarding conditions of release, this Court should consider the following:

   1) Defendant Salemme is a convicted racketeer and former member of organized crime who has spent his life committing serious crimes (including murder) and it is highly unlikely that he will seek legitimate employment if released on bail. AFF 3-5.

   2) Defendant Salemme has demonstrated that Court orders are of little, if any, importance to him. Specifically, as explained in Agent Doherty's Affidavit at pages six through seven, even while detained in prison Salemme violated Judge Wolf's June 26, 1997 protective order that prohibited disclosure of certain documents to anyone who was not an "Authorized Individual" (as defined by Judge Wolf's 6/26/97 order). During the course of investigating how and why numerous sealed F.B.I. 209 reports were improperly disclosed to an unauthorized individual in February of 1999, investigators questioned a former inmate who had been

incarcerated with defendant Salemme. Essentially, this individual indicated that Salemme and his former codefendant, Robert DeLuca, knowingly and willfully gave him access to numerous sealed documents (including F.B.I. 209 reports from former codefendants Flemmi's and Bulger's informant files) while he was incarcerated with SALEMME and Deluca in the fall of 1998 and early 1999. This former inmate, who was not an "Authorized Individual" within the meaning of paragraph nine of the Court's June 26, 1997 protective order, read the sealed documents on a "nightly" basis and "often" discussed them with Salemme. Both Salemme and Deluca stressed the importance of not letting anyone know that he, the former inmate, was looking at the sealed documents. Of course, this cavalier disregard for the District Court's protective order indicates that Salemme is highly likely to ignore any conditions of release imposed by this Court.

III. CONCLUSION

For the foregoing reasons, defendant Salemme should be detained pending trial in this case.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

DATED: November 10, 2004

_____
FRED M. WYSHAK, JR.
BRIAN T. KELLY
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

Suffolk, ss.                                 Boston, Massachusetts
                                             November 10, 2004

    I, BRIAN T. KELLY, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing to the defendant in court on November 10, 2004.

                                              _____
                                              BRIAN T. KELLY
                                              Assistant U.S. Attorney

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| FRANCIS P. SALEMME ) | CR. NO. 04-10323-RGS |
| ) | |

**AFFIDAVIT OF DANIEL M. DOHERTY IN SUPPORT OF PRE-TRIAL
DETENTION OF FRANCIS P. SALEMME**

I, Daniel M. Doherty, being duly sworn, state:

I am a Special Agent with the Drug Enforcement Administration ("D.E.A.") assigned to the Boston, Massachusetts, Field Division. I have been so assigned for more than 20 years. I was the D.E.A. case agent assigned to the prosecution of United States v. Stephen J. Flemmi, et al., Crim. No. 99-10371-RGS, and I was the D.E.A. case agent assigned to the prosecution of United States v. Francis P. Salemme, et al., Crim. No. 94-10287-MLW. I am currently the DEA case agent assigned to this prosecution of FRANCIS P. SALEMME.

In the past, I have monitored and supervised the monitoring of numerous hours of conversations intercepted through the use of court-authorized and consensual electronic surveillance; I have conducted and supervised physical surveillances of persons involved in organized crime; I have participated in search warrants of organized crime locations; I have debriefed numerous

cooperating witnesses such as SALEMME'S former criminal partner, Stephen Flemmi; and I have supervised undercover operations targeting organized crime activities.  I have also worked closely with other law enforcement agents experienced in the investigation of organized crime operations.

I.  SUMMARY

FRANCIS P. SALEMME has been a prominent criminal in the Boston area for decades.  On two prior occasions in 1969 and 1995, SALEMME became and remained a fugitive from justice for extended periods of time.  In 1973, after being captured in New York City, SALEMME was convicted in state court for his role in the 1968 bombing of an attorney who represented a government witness (the victim, John Fitzgerald, lost his leg and almost his life when his car exploded after SALEMME and others successfully planted dynamite in the car).  After being released from prison in 1988, SALEMME promptly resumed his life of crime and eventually became Boss of the New England Family of La Cosa Nostra ("LCN"), previously known as the Patriarca Family.  Shortly after a warrant was issued for his arrest in 1995, SALEMME fled Massachusetts and was a fugitive for eight months until he was captured in Florida in August of 1995.  While detained during the Salemme litigation before the Honorable Mark L. Wolf, SALEMME demonstrated his disregard for court orders and

violated a June 1997 federal protective order by disclosing sealed documents to an unauthorized individual.

In the instant Indictment, SALEMME is charged in two counts with obstruction of justice and making false statements relating to his false denial of information relating to, and his involvement in, the murder of Stephen DiSarro. I have been advised by government counsel that under the applicable U.S. Sentencing Guidelines (U.S.S.G. §2J1.1(c) and U.S.S.G. §2X3.1) and relevant First Circuit precedent (United States v. John Connolly, 341 F.3d 16 (1st Cir. 2003), SALEMME (now 71 years old) is facing 10 years' imprisonment.

At the time of his indictment in 1995, SALEMME was the Boss of the New England Family of La Cosa Nostra ("LCN"). Additionally, prior to his capture in Florida in the summer of 1995, SALEMME had been closely associated with several violent members of the so-called Winter Hill Gang (e.g., Stephen J. Flemmi) for many years. SALEMME's propensity for violence is shown by his prior convictions[1] and by the very fact that SALEMME was formerly a prominent member of La Cosa Nostra.

---

[1] In addition to his 1973 conviction stemming from the car bombing of attorney John Fitzgerald, SALEMME was convicted in West Roxbury district court in 1965 of assault and battery. In December of 1999, SALEMME pled guilty to all counts (including RICO charges and numerous extortion counts) of the indictment in United States v. Francis P. Salemme, et al., Crim. No. 94-10287-MLW.

3

In light of the two prior occasions when he became a fugitive, and due to the fact that he is now 71 years old and facing ten years in prison, SALEMME presents an extremely grave risk of flight. Not only are the present charges against SALEMME serious, but his personal track record strongly suggests that he will flee again if given the opportunity to do so. Likewise, there is a serious risk that if released pending trial, SALEMME would engage in acts of obstruction of justice. In addition to his participation in the vicious assault on attorney Fitzgerald, SALEMME's former membership (and leadership) in the LCN demonstrates that he is willing to engage in the acts of intimidation and obstruction of justice that are often required as part of LCN membership. Finally, as demonstrated by SALEMME's 1997 violation of a federal protective order, it is highly likely that SALEMME would attempt to subvert and ignore any conditions of release which might be imposed by this Court. Indeed, when SALEMME's own brother, John "Jackie" Salemme, was released on bail in United States v. John Salemme, Cr.No. 96-10307-RGS, he (Jackie Salemme) subverted a federal protective order regarding highly sensitive sealed documents and thereby violated his own conditions of release.

II. THE DEFENDANT

As evidenced by SALEMME's recent conviction before Judge Wolf on RICO charges and numerous extortion charges, SALEMME has

a long history of making money through criminal activity rather than through legitimate employment. Throughout his adult life, FRANCIS P. SALEMME has been associated with two closely allied criminal groups operating in the Boston area and elsewhere. Since at least 1979, Stephen J. Flemmi and James J. Bulger were the leaders of a violent criminal organization known as the Winter Hill Gang, which was originally based in Somerville, Massachusetts and more recently operated out of South Boston and elsewhere.  The Winter Hill Gang had a close working relationship with members of the New England Family of the LCN for an extended period of time.  When SALEMME became the Boss of the New England LCN Family, the association between members of the Winter Hill Gang and members of the New England LCN Family became even closer due to SALEMME's long time criminal alliance with Stephen J. Flemmi, who is now a cooperating witness in this case.

SALEMME is currently facing two federal charges which arise from his attempt in November of 1999 to mislead federal investigators and thwart an investigation into the disappearance and murder of Stephen DiSarro.  Investigators have recently confirmed that SALEMME was in fact present when DiSarro was murdered.

    1.    <u>Risk of Flight</u>

I strongly believe that SALEMME is a risk of flight.  After being indicted in 1995, SALEMME promptly fled Massachusetts and

was a fugitive for eight months until he was arrested in Florida in August of 1995. Similarly, in 1969, after being indicted for his role in the attorney Fitzgerald bombing, SALEMME promptly fled Massachusetts and was a fugitive for approximately four years until he was arrested in New York City in 1973. Based on SALEMME's ability to utilize his own prior fugitive experience and the fact that he is now facing the likelihood of spending the rest of his life in jail if convicted of the pending charges, I believe SALEMME will do exactly the same thing, <u>i.e.</u> flee, if he is released on bail in this case.

    2.    <u>Inadequacy of Conditions of Release</u>

It is my strong belief that SALEMME is highly unlikely to abide by any Court orders regarding conditions of release. For example, SALEMME violated Judge Wolf's June 26, 1997 protective order that prohibited disclosure of certain documents to anyone who was not an "Authorized Individual" (as defined by Judge Wolf's 6/26/97 order). During the course of investigating how and why numerous sealed F.B.I. 209 reports were improperly disclosed to an unauthorized individual in February of 1999, investigators questioned a former inmate who had been incarcerated with defendant Salemme. Essentially, this individual indicated that SALEMME and his former codefendant, Robert DeLuca, knowingly and willfully gave him access to numerous sealed documents (including F.B.I. 209 reports from

former codefendants Flemmi's and Bulger's informant files) while he was incarcerated with SALEMME and Deluca in the fall of 1998 and early 1999. This former inmate, who was not an "Authorized Individual" within the meaning of paragraph nine of the Court's June 26, 1997 protective order, read the sealed documents on a "nightly" basis and "often" discussed them with SALEMME. Both SALEMME and Deluca stressed the importance of not letting anyone know that he, the former inmate, was looking at the sealed documents. This flagrant disobedience of a court order indicates to me that SALEMME will not obey any bail orders in this case.

Of course, SALEMME is also a dangerous individual with a serious criminal record who has murdered people in the past and who is highly unlikely to be deterred by court orders regarding bail when he now faces the prospect of spending the rest of his life in prison.

III.  CONCLUSION

In light of all of the foregoing, I believe that there is no condition or combination of conditions for FRANCIS P. SALEMME that will ensure the defendant's appearance at trial and will ensure that the defendant does not engage in efforts to obstruct

justice.

_____
DANIEL M. DOHERTY
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this 9th day of November, 2004.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

ERNEST S. DINISCO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
December 11, 2009