UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-CR10323-RGS

UNITED STATES OF AMERICA

V.

FRANCIS P. SALEMME

## ORDER ON DETENTION

ALEXANDER, M.J.

The defendant, Francis Salemme, appeared before this Court on November 29 and December 7, 2004, for a hearing on detention pursuant to an indictment charging him with a violation of 18 U.S.C. § 1503 (obstruction of justice) and 18 U.S.C. § 1001 (false statements). Attorney Stephen J. Weymouth represented the defendant and Assistant United States Attorney Brian T. Kelly appeared on behalf of the government. The government moved to detain Mr. Salemme pursuant to 18 U.S.C. § 3142 (f)(1)(D) (criminal recidivism), (f)(2)(A) (serious risk of flight), and (f)(2)(B) (serious risk of obstruction of justice).

This case emanates from a prior criminal proceeding against Mr. Salemme, United States v. Francis P. Salemme, et al., 94-10287. In 1995, Mr. Salemme was

indicted by a federal grand jury on racketeering and extortion charges (the "1995 indictment").  Mr. Salemme eventually entered into a plea agreement, in December 1999, in which he pled guilty to the charges then pending against him. Additionally, as part of the plea negotiation process, Mr. Salemme offered to assist the government with its prosecution of another individual in exchange for a reduced prison sentence.  Mr. Salemme participated in a proffer interview for that purpose in November 1999.

This case revisits the 1999 plea negotiations to the extent that the government now alleges that Mr. Salemme was not entirely truthful during the negotiations.  Specifically, the current indictment charges that Mr. Salemme provided false information regarding the disappearance and death of Stephen DiSarro.  The details of the 1999 negotiations are not relevant to the issue currently before the Court – whether to detain Mr. Salemme pending trial on the current charges – but the background from which the current case arises, and certain actions taken by Mr. Salemme in the past, do instruct the Court's detention decision, as further detailed below.

The Court was aided in reaching its decision by the credible testimony of Special Agent Daniel M. Doherty, a twenty-one year veteran of the Drug Enforcement Administration ("DEA"), provided during the detention hearing;

various papers filed by the parties including the government's motion for detention, which included an affidavit from Special Agent Doherty; the defendant's proposed release plan and the responses thereto from the government and Pretrial Services ("PTS");[1] and a PTS Report.

In that an indictment is extant, probable case exists to believe that Mr. Salemme committed the offenses with which he is charged.  United States v. Vargas, 804 F.2d 157, 162-63 (1ˢᵗ Cir. 1986).  Accordingly, the information set forth below, culled from the documentary evidence, the motions filed with the Court, and Special Agent Doherty's credible testimony, which spanned both days of the detention hearing, relates primarily to detention.

Special Agent Doherty has been assigned to the Boston, Massachusetts, Field Division of the DEA for more than twenty years, and is the DEA agent assigned to the current prosecution of Mr. Salemme.  He was also the DEA agent assigned to two prior criminal prosecutions of some relevance to the current matter:  United States v. Stephen J. Flemmi et al, 99-10371-RGS, and United

---

[1]The defendant filed the proposed release plan, as well as other motions, under seal. Although the Court recognizes that certain circumstances warrant filing sealed motions, the Court will not allow the defendant to continue to do so in this case without explanation as to why the motions should be sealed.

<u>States v. Francis P. Salemme, et al.</u>, 94-10287-MLW, the latter of which, again, led to Mr. Salemme's 1999 plea agreement.

Special Agent Doherty testified, at the detention hearing and by affidavit, that Mr. Salemme has been a prominent criminal in the Boston area for decades, and has long been involved in organized crime. Mr. Salemme has been closely associated with a number of other individuals also involved in organized crime, including Stephen J. Flemmi who is a cooperating witness in the current case against Mr. Salemme. Mr. Flemmi is currently serving a life sentence without parole.

In 1969 and again in 1995 Mr. Salemme fled Massachusetts in the face of pending criminal charges. Mr. Salemme disappeared in 1969 after being indicted by a state grand jury on charges related to the car bombing of attorney John Fitzgerald. Mr. Salemme remained a fugitive until 1973 when he was captured and arrested in New York. Mr. Salemme was eventually convicted and remained in prison until 1988. In 1995, the government again sought to arrest Mr. Salemme, pursuant to 1995 indictment. Once again, Mr. Salemme fled, and was not arrested until being captured in Florida, eight months after the warrant issued.

In addition to Mr. Salemme's history of flight, Special Agent Doherty also testified that Mr. Salemme violated a Court order related to the 1995 indictment.

4

During the time that Mr. Salemme was detained prior to entering into the 1999 plea agreement, Mr. Salemme disclosed certain documents, including reports from the  Federal Bureau of Investigation ("FBI"), to a fellow inmate even though the documents were subject to a protective order.  Special Agent Doherty testified about Mr. Salemme's violation of the Court order in support of his assessment that Mr. Salemme is unlikely to abide by a Court order regarding any conditions of release.

During defense counsel's very thorough cross-examination of Special Agent Doherty, Special Agent Doherty testified that he bases his assessment that Mr. Salemme is likely to flee if not detained on Mr. Salemme's prior attempts, in 1969 and 1995, to evade arrest, and not on any actions or events that have occurred since that time.  Similarly, Special Agent Doherty bases his assessment that Mr. Salemme poses a danger to the community on Mr. Salemme's past, and not on any recent events.  Special Agent Doherty testified, for example, that he is not aware of any evidence or allegations that Mr. Salemme has committed any criminal offenses or engaged in any violent activity from March 2003 to the present.

Additionally, defense counsel questioned Special Agent Doherty in some detail about Stephen Flemmi.  Mr. Flemmi has been an FBI informant since 1965. In 2003, he began to cooperate with the government in the current case against Mr.

Salemme.  Specifically, Mr. Flemmi has provided a statement to the government regarding Mr. DiSarro's disappearance and death.  Defense counsel also elicited information regarding Mr. Flemmi's known capacity to lie under oath.  Special Agent Doherty also stated, however, that other witnesses would testify to Mr. Salemme's involvement.  Although the Court appreciates defense counsel's efforts to conduct a detailed cross-examination of Special Agent Doherty, the Court can not infer that information related to the veracity of Mr. Flemmi's testimony, in prior proceedings involving both himself and Mr. Salemme, is dispositive respecting the issue currently before the Court – whether Mr. Salemme should be detained pending trial – and for this reason will not reiterate all of Special Agent Doherty's testimony on that issue.[2]

  With the aforementioned in mind, the Court now engages in the detention calculus.  Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . " 18 U.S.C. §

---

[2]It should be noted, as well, that for some period of time following Mr. Salemme's 1999 plea agreement, Mr. Salemme was a member of the government's witness protection program. The government asserts that Mr. Salemme is no longer in the witness protection program, but has special witness/defendant protection where he is now being held.  Ultimately, however, that issue has little or no bearing on the Court's detention determination.

3142(e).  "With regard to risk of flight as a basis for detention, the Government

must prove by a preponderance of the evidence that no combination of conditions

will reasonably assure the defendant's appearance at future court proceedings."

United States v. DiGiacomo, 746 F. Supp. 1176, 1180-81 (D. Mass. 1990).  The

burden of persuasion remains with the Government on the question of flight risk.

See id. at 1181, citing United States v. Jessup, 757 F. 2d 378, 381-82 (1st Cir.

1985).

        The issue of whether the defendant poses a danger to the community entails

a  different analysis.  The Government must prove by clear and convincing

evidence that no combination of conditions will reasonably assure the safety of

any other person and the community.  United States v. Chimurenga, 760 F.2d 400

(2d Cir. 1985).  The meaning of clear and convincing evidence does not imply that

the judge be "plumb sure" that there is no set of conditions that will protect the

public, but the judge should be "pretty sure."  United States v. Gray, 651 F. Supp.

432, 438 (W.D. Ark. 1987), aff'd., 855 F.2d 858 (8th Cir.), cert. denied, 488 U.S.

866 (1988).  Nevertheless, because of the interference of pre-trial detention with

the "importan[t] and fundamental . . . right" of liberty, United States v. Salerno,

481 U.S. 739, 750 (1987), this Court will not make such a finding lightly.

The Court's independent analysis regarding detention is governed by the rubric set forth in 18 U.S.C. §3142(g).  Pursuant to Section 3142(g), the Court first looks to the nature and circumstances of the offenses charged against Mr. Salemme.  Charges of providing false statements and obstructing justice are of serious concern, particularly where, as here, those charges relate to statements made by the defendant regarding his alleged involvement, or lack thereof, in the disappearance and death of an individual.

Second, the Court considers the weight of the evidence against the defendant.  Here, the evidence is not insignificant, and, as previously discussed, the extant indictment is sufficient to establish probable cause.  While considerable time was utilized by defense counsel to attack the honesty, or lack thereof, of Mr. Flemmi, it must be noted that the government elicited testimony from Special Agent Doherty that Mr. Flemmi, as a witness, was not the sole evidentiary basis for the current charges against Mr. Salemme.

The third inquiry, the history and characteristics of the defendant, is of paramount importance here.  There is little question that Mr. Salemme's prior record of flight in the face of criminal charges weighs heavily against him.  Twice before Mr. Salemme has evaded arrest by fleeing the state.  Defense counsel ably tried to argue that Mr. Salemme no longer has the means to flee that he had in the

past. In 1969 and again in 1995, as defense counsel posits, Mr. Salemme had friends and associates to provide money and assistance with his flight. Now, however, he has neither. He has alienated himself from his associates, he has no assets or real estate, and is, put simply by defense counsel, too old to run.

In addition to defense counsel's averments at the detention hearing that Mr. Salemme has no means by which to flee, defense counsel's proposed conditions of release, filed under seal, suggest the same. It is perspicuous that defense counsel has good intentions. Good intentions, however, do not provide the necessary assurances required by the Bail Reform Act. Although it appears that Mr. Salemme may have no where to go but to the care of defense counsel, his past attempts to elude arrest are a burden he must now bear, and the conditions of release otherwise proposed by defense counsel are simply not acceptable.

Other asseverations advanced by the government in support of detaining Mr. Salemme on the basis that he is a risk of flight include the fact that Mr. Salemme, if convicted, faces up to ten (10) years in prison. Mr. Salemme is 71 years old, and a 10-year sentence may therefore amount, in essence, to a life sentence. Additionally, the government contended that Mr. Salemme's brother, Jackie Salemme, may be able to aid in any attempted flight. Defense counsel

9

averred, however, that Jackie Salemme, even if inclined to help, has no assets with which to do so.

The Court is not persuaded by the asseverations of defense counsel that it gentrify Mr. Salemme due to his membership compliance while in the witness protection program, and finds the position of defense counsel as to Mr. Salemme's age minimizing his prior ways to be tenuous. Mr. Salemme has engaged in a life-long career of crime. That he is now 71 and may no longer associate with his former colleagues does not erase his prior criminal record or the Court's concerns that Mr. Salemme presents a significant danger to the community.

Against this background, the Court concludes that there is clear and convincing evidence that there are no conditions of release which could assure the safety of the community and therefore ORDERS that the defendant FRANCIS SALEMME be detained pending trial. Further, pursuant to 18 U.S.C. §3142 (i) it is ORDERED that:

1.  The Defendant be, and hereby is, committed to the Custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.  The Defendant be afforded reasonable opportunity for private consultation with his counselor; and

3.      On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

       Review of this Order may be obtained by Mr. Salemme's filing of a motion

for revocation or  amendment pursuant to 18 U.S.C. § 3145 (b).

SO ORDERED.


12/28/04                            /S/ Joyce London Alexander
Date                                  United States Magistrate Judge