UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

JOHN J. CONNOLLY,

Defendant.

CRIMINAL ACTION
NO. 99-CR-10428-JLT

**OPPOSITION OF GLOBE NEWSPAPER COMPANY TO INTERVENOR FRANCIS P. SALEMME'S "MOTION FOR HEARING IN CONNECTION WITH DISCOVERY ISSUES"**

Globe Newspaper Company, Inc. (the "Globe") submits this opposition to the Motion of Francis P. Salemme ("Salemme") for Hearing in Connection with Discovery Issues. The Globe opposes that part of Salemme's motion seeking an order sealing certain records related to the motion for a new trial filed by the defendant John J. Connolly ("Connolly"). Reduced to essentials, the Globe submits that Judge Tauro correctly granted the Globe's motion for public access to the materials filed in connection with Connolly's new trial motion and that Salemme has failed to carry his burden of demonstrating that his fair trial interests warrant revisiting that ruling.

The Globe respectfully incorporates by reference the legal arguments previously submitted to the court in the Globe's memorandum of law in support of its Motion to Terminate the Sealing Orders concerning Defendant's Motion for a New Trial (filed on July 14, 2005). Rather than repeating those arguments here, this memorandum is intended to address only the arguments made by Salemme after Judge Tauro's order of July 28, 2005 granting the Globe's motion.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2002, Connolly, a former FBI agent, was found guilty of racketeering, obstruction of justice, and making false statements. See United States v. Connolly, 341 F.3d 16 (1st Cir. 2003). Salemme, the former "boss" of La Cosa Nostra's Boston family, was called by the government to testify against Connolly. 341 F.3d at 20. He testified about several payments made to Connolly to guarantee the flow of confidential law enforcement information to members of organized crime. 341 F.3d at 23, 26, 27. There was evidence that the information provided by Connolly often had "dire consequences," directly leading to at least three murders. 342 F.3d at 23-24.

On October 27, 2004, Salemme was indicted on charges of obstruction of justice and making false statements to government prosecutors in connection with plea negotiations that preceded his testimony against Connolly. See United States v. Francis P. Salemme, Crim. No. 1:04-10323-RGS.[1]

On or about May 27, 2005, Connolly filed a motion for a new trial. In the motion, Connolly claimed, among other things, that the government intentionally concealed exculpatory evidence from him and deprived him of a fair trial. New Trial Motion, ¶ ¶ 1, 3-4.

The memorandum and exhibits filed by Connolly in support of his motion for a new trial were filed under seal. Id. ¶ 5. On July 14, 2005, the Globe moved to intervene and to terminate the sealing orders. The Globe's motion was granted by Judge Tauro on July 28, 2005, and was stayed seven days to permit "any person aggrieved and having standing" to appeal.

On August 2, 2005, Salemme moved to intervene "for the limited purpose of appealing the July 28, 2005 Order Terminating the Sealing Orders Concerning Defendant's Motion for New Trial ... insofar as the Order applies to a ten (10) page 302 FBI report dated October 7, 2004 concerning Francis P. Salemme." See Motion to Intervene at 1. Salemme also noticed an

---

[1] The Globe's initial memorandum incorrectly stated that Salemme had been charged with perjury, not making false statements.

appeal from the July 28, 2005 Order.

On August 2, 2005, the First Circuit entered an order "authoriz[ing] the district court to act on [Salemme's] request for continued sealing of the FBI report dated October 7, 2004" and extended the stay of the unsealing order another seven days. See Order of the Court (1st Cir. No. 05-2156, August 2, 2005). Thereafter, on August 9, 2005, Judge Tauro granted Salemme's motion to intervene and extended the stay of the unsealing order "until Judge Stearns, the trial judge in United States v. Salemme, 1:04-cr-10323 RGS, has an opportunity to determine whether Mr. Salemme's right to a fair trial takes precedence over the public's right of access to any of the documents at issue." On August 10, 2005, the court (Stearns, J.) entered an order continuing the stay an additional seven days "to permit the court to hear all interested parties before entering a decision."

## II. ARGUMENT

### A. Salemme's Fair Trial Interests Do Not Justify a Sealing Order.

Salemme's motion raises one narrow legal issue: should the public be denied access to an FBI 302 report filed in connection with Connolly's motion for a new trial because disclosure of the report will prejudice Salemme's fair trial rights. The governing legal standard is contained in the Supreme Court's decision in Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 14 (1986) ("Press-Enterprise II"). The Press-Enterprise II Court reviewed an order closing a preliminary criminal hearing based on findings that public access to the hearing would create a "reasonable likelihood of substantial prejudice" to the defendant's fair trial rights. 478 U.S. at 14. The Supreme Court reversed, holding that a higher standard must be met in order to overcome the public's First Amendment right of access to criminal proceedings:

> If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is a *substantial probability* that the defendant's right to a fair trial will be prejudiced by publicity *that closure would prevent* and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.

478 U.S. at 14. The same standard governs the public's right of access to judicial records. See



LITDOCS/611648.1

generally Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 502 (1st Cir. 1989) (First Amendment right of access attaches to records of criminal proceedings); CBS, Inc. v. United States District Court for the Central District of California, 765 F.2d 823 (9th Cir. 1985) (Kennedy, J.) (First Amendment right of access applies to post-conviction motion to reduce sentence).

Viewed in the context of this governing legal standard, Salemme faces an extraordinary burden in attempting to justify sealing the 302 report (or any portion of the Connolly new trial papers). The test is not whether the report contains information unflattering to Salemme, or whether its disclosure might prejudice some potential members of the jury venire. Indeed, under Press-Enterprise II, proof that disclosure of the report would be *reasonably likely* to prejudice Salemme's fair trial rights would not justify a sealing order. 478 U.S. at 14 ("the 'reasonable likelihood' test places a lesser burden on the defendant [seeking closure] than the 'substantial probability' test which we hold is called for by the First Amendment."). Rather, the public's right of access may be overcome only based on findings that disclosure will cause a "substantial probability" of harm to Salemme's fair trial rights and that a sealing order will effectively prevent that harm from occurring.

In this case, as in all cases, the fact that publicity has been widespread or that jurors have obtained some knowledge about the case is wholly insufficient to prove that a defendant's fair trial rights have been or will be violated. United States v. Stackpole, 811 F.2d 689, 697 (1st Cir. 1987). "In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 722-23 (1961). "[T]he relevant question is not whether the community remembered the case, but whether the jurors ...

had such fixed opinions that they could not judge impartially the guilt of defendant[s]." Patton v. Yount, 467 U.S. 1025, 1035 (1984). See generally Murphy v. Florida, 421 U.S. 794, 799-800 (1975) ("Qualified jurors need not, however, be totally ignorant of the facts and issues involved."); Mu'Min v. Virginia, 500 U.S. 415, 431-32 (1991) (barrage of prejudicial publicity before murder trial did not require questioning of individual jurors).

Through jury voir dire, "a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 15 (1986). In this manner, criminal defendants in other cases have received fair trials despite extensive pretrial publicity. See e.g., United States v. Anguillo, 897 F.2d 1169, 1180-1184 (1st Cir.), cert. denied, 498 U.S. 845 (1990); United States v. Moreno Morales, 815 F.2d 725, 730-36 (1st Cir.), cert. denied, 484 U.S. 966 (1987). Careful and emphatic jury instructions, changes of venue, and brief continuances also have been used to avoid the potential effects of pretrial publicity. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 563-64, 602-603 (1976).

Salemme's submission does not address the stringent standard he must meet to prove that his fair trial rights justify a sealing order. He instead assumes -- incorrectly -- that he has a right to seal all "harmful" information contained in court files. That erroneous assumption is no substitute for proof of a substantial probability that disclosure of the FBI report will violate his fair trial rights, i.e, that jurors will be unable to lay aside their opinions and render a verdict based on the evidence presented in court. Dowd, 366 U.S. at 722-23.

Salemme also fails to explain how disclosure of the report will cause a substantial probability of harm to his fair trial rights "that closure would prevent." See Press-Enterprise II, 478 U.S. at 14 (requiring proof that defendant's fair trial rights "will be prejudiced by publicity *that closure would prevent*") (emphasis added). This inquiry requires an examination of the incremental effect of releasing the report in view of the publicity that already has occurred and the publicity that inevitably will continue as the case proceeds. In other words, if the publicity that will result from public access to the 302 report is not qualitatively different from past or

future publicity that has or will circulate about Salemme, the Supreme Court's requirement that the prejudicial publicity be of the type that "closure would prevent" simply cannot be met. See generally Pokaski, 868 F.2d at 505-506 (First Amendment requires that the sealing of court records must effectively serve its intended interest); Globe v. Superior Court, 457 U.S. 596, 607-608 n.19, 610 (1982) (validity of restriction on public access to criminal trial requires consideration of the incremental effect of allowing access and the effectiveness of closure given alternative sources of publicity).

Given the uncontroverted public record in the case, Salemme cannot carry his burden of showing either that the incremental effect of disclosing the FBI report poses a realistic threat to his fair trial rights or that sealing the report is an effective means of protecting those rights. Evidence offered by the government shows that Salemme "has been a prominent criminal in the Boston area for decades" and is the former "Boss of the New England Family of La Cosa Nostra ("LCN"), previously known as the Patriarca Family." Affidavit of Daniel M. Doherty in Support of Pre-Trial Detention of Francis P. Salemme at 2 (filed in Crim. No. 10323-RGS). See also Connolly, 341 F.3d at 20. The Government also has submitted testimony that Salemme "is a dangerous individual with a serious criminal record who has murdered people in the past…." See Doherty Aff. at 7. His record includes a conviction in 1973 for his role in the attempted murder of a lawyer representing a government witness and a guilty plea in 1999 to all counts (including RICO charges and numerous extortion counts) of the indictment in United States v. Francis P. Salemme, et al., Crim. No. 94-10287-MLW. See Doherty Aff. at 2, 3 n.1. He received a reduction of his sentence in the latter case for his "substantial assistance" in the Connolly prosecution. See Salemme Indictment, at 4-5 (Crim. No. 10323-RGS). News accounts of his plea arrangement included reports that he admitted involvement in eight gangland murders. See e.g., April 16, 2004 Boston Globe ("Ex-convict Salemme leaves federal protection program").

Salemme has personally acknowledged his criminal history, generating further publicity that effectively precludes him from proving that disclosure of the report -- as opposed to his own

statements -- is apt to harm his fair trial rights. On April 10, 2003, Salemme testified before the House Committee on Government Reform. A transcript of his testimony currently is available on the House of Representatives Committee on Government Reform web site (http://reform.house.gov/UploadedFiles/Francis%20Salemme%20Interview%20-%20Redacted.pdf) ("Tr."). Among other things, Salemme testified to (a) his willingness to murder attorney John Fitzgerald on orders from Raymond Patriarca ("So word came from Providence; I was called to eliminate John Fitzgerald. That was agreeable to me, why he had to be eliminated, because he was going to be a witness against Raymond L.S., and I would take care of it my way.") (Tr. at 4-5); (b) his involvement in multiple gangland murders ("Absolutely. I mean, the Hugheses, the McLaughlins, they were all eliminated, and I was a participant in just about all of them, planned them and did them.") (Tr. at 14); and (c) his use of information from the FBI to commit murders ("but [Paul Rico] gave me the address and I was able to find him. We killed him at eight o'clock in the morning at a bus stop there, but that was a very, very important piece of information.") (Tr. at 26).

Even more recently, in granting the government's motion to detain Salemme prior to trial, the court explicitly found that Salemme presents a significant danger to the community. See United States v. Salemme, Order on Detention (December 28, 2004) at 10; Order on Motion for Revocation or Amendment of Order on Detention (August 10, 2005).

None of the foregoing information -- all of it "damaging" pretrial publicity -- means that Salemme cannot obtain a fair trial. He of course can, just as other prominent defendants have, through the use of voir dire, jury instructions, and, if necessary, a change of venue. What this public record does establish, however, is that Salemme cannot meet his burden of showing that the disclosure of the FBI 302 report will cause a substantial probability of harm to his fair trial rights or that an order sealing the report is an effective means of protecting those rights.

Salemme's current motion also asks that the court review all exhibits submitted in connection with Connolly's new trial motion and determine whether any of those documents should be sealed. His motion to intervene was much more limited, seeking to intervene "for the

*limited purpose* of appealing the July 28, 2005 Order Terminating the Sealing Orders Concerning Defendant's Motion for New Trial ... *insofar as the Order applies to a ten (10) page 302 FBI report dated October 7, 2004 concerning Francis P. Salemme*." See Motion to Intervene at 1 (emphasis added). Indeed, the motion expressly stated that he "takes no position as to the unsealing of any other exhibit submitted in support of the [new trial motion]." It was presumably for that reason that when the First Circuit remanded the case, it did so by "authoriz[ing] the district court to act on appellant's request for *continued sealing of the FBI report dated October 7, 2004*." United States v. Connolly, First Circuit No. 05-2156 Order of the Court (August 2, 2005) (emphasis added).

Even if Salemme is allowed to pursue a broader objection at this juncture, it must suffer the same fate as his request to seal the 302 report. In both cases, he has failed to carry the substantial burden required to overcome the public's First Amendment right of access to judicial documents, particularly in a case such as this one involving allegations of misconduct by government officials. As set forth in more detail in the Globe's initial memorandum filed before Judge Tauro, the public has a compelling interest in understanding the basis for Connolly's new trial motion and evaluating the court's ultimate ruling on that motion. Salemme's testimony played an important role in the outcome of that trial and the public's interest in evaluating the charges and counter-charges concerning his credibility is intense and legitimate. Because Salemme has failed to carry his burden of showing that his fair trial interests, on the facts of this case, trump the public's right of access to these public corruption proceedings, his motion to seal should be denied.

## III. CONCLUSION

For the reasons stated above and in its initial memorandum of law, the Globe respectfully submits that the order sealing the record of the defendant's motion for a new trial should be terminated and the stay of the unsealing order vacated. See generally Pokaski, 868 F.2d at 507 ("even a one to two day delay impermissibly burdens the First Amendment").

Of Counsel:

David McCraw, Esq.
The New York Times Company
229 West 43rd Street
New York, NY 10036
(212)556-4031

**GLOBE NEWSPAPER COMPANY, INC.,**

By its attorneys,

Jonathan M. Albano, BBO #013850
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

Dated: August 15, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by ~~mail-hand~~ and by email on 8/15/05

Jonathan M Albano



LITDOCS/611648.1