UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 99-10428-JLT

UNITED STATES OF AMERICA

v.

JOHN J. CONNOLLY, JR.

---

CRIMINAL ACTION NO. 04-10323-RGS

UNITED STATES OF AMERICA

v.

FRANCIS P. SALEMME, SR.

ORDER ON CONTINUED SEALING
OF AN FBI REPORT DATED OCTOBER 7, 2004

August 22, 2005

STEARNS, D.J.

At issue is an FBI 302 report dated October 7, 2004. The report was filed under seal as an exhibit to a motion by the defendant John J. Connolly, Jr., for a new trial. The 302 report relates statements allegedly made by Francis P. Salemme, Sr., to a jailhouse informant. The statements impugn the truthfulness of Salemme's trial testimony incriminating Connolly.[1] Salemme is a defendant in a criminal case, United States v.

[1]The court is not unaware of the fact that some unknown person in defiance of the orders of the Court of Appeals and this court provided the Boston Herald newspaper with a copy of the 302 report. Rather than wait for today's promised decision, the Herald chose to publish the most sensational contents of the report in this morning's edition. The sealing issue is not, however, moot as the Globe, which was either not favored with a copy of the report or decided responsibly to refrain from immediate publication, retains an interest in its disclosure.

Salemme, 04-CR-10323-RGS, which is pending in this session of the court. On July 28, 2005, Judge Tauro, who is the presiding judge in the Connolly matter, allowed a motion by the Globe Newspaper Company (the Globe) to unseal the 302 report. Salemme appealed the unsealing order to the Court of Appeals without first moving to intervene in the district court. Given the unusual procedural posture of the case, the Court of Appeals remanded Salemme's request to continue the sealing of the report to Judge Tauro for a decision in the first instance. Given Salemme's asserted interest in keeping the document sealed, Judge Tauro transferred the matter to this judge who continued the stay of the unsealing order and scheduled a hearing on the merits. At the August 17, 2005 hearing, this court allowed motions filed by the Globe, the Boston Herald, and Connolly to intervene for the purpose of seeking dissolution of the stay.

The issue is easily framed. The release of the 302 report pits Salemme's Sixth Amendment right to be tried by a jury uncontaminated by prejudicial pretrial publicity, In re Providence Journal Co. Inc., 293 F.3d 1, 13 (1st Cir. 2002), against the public's First Amendment right of access to judicial records.[2] Nixon v. Warner Communications, Inc., 435 U.S. 589, 599 (1978). The parties agree as to the standard to be applied. While "[n]o right ranks higher than the right of the accused to a fair trial," Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508 (1984), an order restricting public access is proper "only

[2]Salemme argues that a document produced in discovery, as was the contested 302 report, is not a judicial record and does not become one by being attached to pleadings filed with the court. This is not an inconsiderable argument, as there is no First Amendment right of public access to the criminal discovery process in a pending case. Here, however, this court has already indicated that it relied in part on the 302 report in denying Salemme's motion for revocation of the Magistrate Judge's detention order. As such, it has acquired the character of a judicial record.

if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent, and second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 14 (1986) (Press-Enterprise II).

There is no doubt that the 302 report contains inflammatory material. As related in the press, the report memorializes a series of purported conversations between Salemme and a since publicly-identified informant.[3] The content of the reported conversations is for the most part anecdotal. The historical details add little to a story more richly told in popular books such as Black Mass and Deadly Alliance and could easily have been gleaned from either. Almost everything said about Salemme in the 302 report has been said before in the torrent of revelations about the dealings of the Boston office of the FBI and the Irish and Italian mobs that emanated from Judge Wolf's earlier highly-publicized case in which Salemme played so prominent a part. If the 302 report is accurate, it is far less prejudicial to Salemme than it is to the government attorneys who prosecuted John Connolly and to other public figures. It is to that extent (and not because of the unflattering light cast on Salemme) that the document has a public significance.[4]

---

[3]I emphasize "purported conversations." Neither the press nor the court has any magical means of verifying whether the report is true, half-true, or a compilation of sordid lies.

[4]I agree in essence with the observation of the Globe's attorneys that "[g]iven the uncontroverted public record in the case, Salemme cannot carry his burden of showing either that the incremental effect of disclosing the FBI report poses a realistic threat to his fair trial rights or that sealing the report is an effective means of protecting those rights." August 15, 2005 Opposition, at 6. There is, however, one reported remark of Salemme's that is gratuitously inflammatory and of no bearing on anything of substance. I will order

That does not end the matter. Assuming that some prejudice to Salemme will accrue from disclosure of the report, of which I have little doubt, the court is obligated by Press-Enterprise II to consider the reasonable alternatives that are available to protect his right to a fair trial. These include the traditional prophylactics of rigorous and, if called for, individual voir dire, careful and focused jury instructions, and if necessary, a change of venue. There is also the palliative effect of time as a trial is still some months in the future. Finally, I note that the crimes with which Salemme is presently charged (obstruction of justice and the making of false statements), while serious, bear only indirectly on the sensational mob-related crimes described in the 302 report. In sum, I agree with the attorneys for the Globe and the Herald that Salemme has not met the demanding standard of showing *a substantial probability* that his right to a fair trial would be jeopardized by disclosure of the 302 report.

ORDER

For the foregoing reasons, the motion by defendant Salemme to continue the stay sealing the FBI 302 report is DENIED with the exception of the second sentence of the first full paragraph on page 3 of the report. That sentence the Clerk is instructed to redact.[5] While the issue is likely moot, the court will continue the stay until 3:00 p.m., Tuesday, August 23, 2005, to permit Salemme to indicate whether he intends to seek relief (if any

---

the sentence in which it appears redacted from the unsealed 302 report.

[5]Salemme requests that the court consider sealing other of the exhibits submitted in connection with Connolly's motion for a new trial. As the court explained at the hearing, its jurisdiction is limited by the remand order of the Court of Appeals, which expressly authorizes the district court to act on the continued sealing of the FBI report and nothing else.

such relief remains viable) from the Court of Appeals. Further, the United States Attorney's Office is ORDERED to file within ten (10) days of the date of this order a list of all persons known to it who were provided with copies of the October 7, 2004 302 report.[6]

SO ORDERED.

/s/ Richard G. Stearns

_______________________________
UNITED STATES DISTRICT JUDGE

[6]Connolly's motion to be granted access to discovery provided by the government to Salemme is DENIED for want of standing to intervene for that purpose.