**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

**NO.  1:04-CR-10323-RGS**

2006 DEC 15  P 3: 27

**UNITED STATES OF AMERICA**

U.S. DISTRICT COURT
DISTRICT OF MASS.

**v.**

**FRANCIS P. SALEMME,**
**Defendant.**

---

### MOTION TO DISMISS AND MEMORANDUM (FILED UNDER SEAL)

---

Now comes the defendant Francis P. Salemme (hereinafter
referred to as "Salemme") and hereby moves this Honorable
Court to dismiss the indictment against him because the grand
jury presentation in this case was incomplete, violating his
constitutional right to due process and was secured by
prosecutorial misconduct since the government failed to
present exculpatory evidence to the grand jury which was
known to the prosecution before their deliberations.  It is
submitted that these actions were in contravention of the
standards set forth in the Fifth Amendment to the United
States Constitution, the Due Process Clause of the United
States Constitution, and the dictates of Darden v. Wainright,
477 U.S. 168, 181 (1986), Bank of Nova Scotia v. United
States, 487 U.S. 250, 254 (1988), Napue v. Illinois, 360 U.S.
264, 269 (1959), Mooney v. Holohan, 294 U.S. 103, 112 (1935),

-1-

Berger v. United States, 295 U.S. 78 (1935), Alcorta v. Texas, 355 U.S. 28 (1957), Pyle v. Kansas, 317 U.S. 213 (1942), Brady v. Maryland, 373 U.S. 83, 87-88 (1963) and United States v. Williams, 504 U.S. 36 (1992). The defendant directs this Court's attention to the following memorandum of law and asks that it be incorporated by reference herein.

The defendant was indicted by a federal grand jury in the District of Massachusetts for obstruction of justice in violation of 18 U.S.C. § 1503, and for making false statements to a federal officer in violation of 18 U.S.C. § 1001. Specifically, Salemme, as part of plea negotiations in an unrelated federal racketeering case, negotiated through counsel clearly set forth and negotiated conditions in both his proffer and plea agreements pursuant to which a proffer discussion with Salemme took place on September 28, 1999 (Exhibits A and B). However, Salemme, while unrepresented by counsel, was interrogated on November 2, 1999 and questioned about matters not covered by the proffer agreement (Exhibit C).

The government has here charged that Salemme allegedly lied to authorities during this November, 1999 meeting regarding Stephen A. DiSarro's (hereinafter referred to as "DiSarro") disappearance in May, 1993, the people allegedly involved in that event and with attempting to falsely shift

the blame for the situation to others (See Exhibit D, paragraphs 26-27). It was during this interview that Salemme emphatically denied any involvement in the disappearance and alleged death of DiSarro.

The prosecution in this case, in the person of Assistant United States Attorney Fred M. Wyshak, Jr. (hereinafter referred to as "Wyshak"), subsequently presented evidence to the grand jury which charged the defendant with failing to disclose his alleged participation in the DiSarro matter to authorities during that interview. However, the irony of the grand jury presentation and its legally fatal conundrum is that the only testimony inculpating the defendant in these crimes came from one witness, Stephen J. Flemmi (hereinafter referred to as "Flemmi"). Flemmi testified before the grand jury in Worcester, Massachusetts on February 11, 2004, and his questions and answers were supervised and put by Wyshak. It should be noted that Flemmi's testimony about this situation has not been corroborated by any other witness or evidence before this or any grand jury.

If the parties in this case agreed that Flemmi's testimony in this and other cases was "saturated with inconsistencies and fabrications", then there would likely be no need for a hearing on this motion. Additionally, if the government would concede that Flemmi's claims here were the

"…product of a desperate man who has tried to rationalize a life of heinous crime and duplicitous treachery…", then this motion could be allowed without argument. If everyone here understood that Flemmi's allegation in this case was an "outrageous contrivance", a "…blatant example of [his] disregard for the truth" and that he "cares little about the truth and, as has been his pattern throughout his life, will say or do whatever suits his personal interest", then there really is no need to waste this Court's time. It is understood that "Flemmi's inability to testify consistently from one day to the next and sometimes from one moment to the next about simple facts is a classic indicator of perjury." The defendant could not agree with these statements more completely.

Ironically, these strong words regarding Flemmi's credibility as a witness are taken verbatim from Wyshak's opposition to Flemmi's Motion to Dismiss in his star witness' racketeering case, which was then pending before Judge Mark L. Wolf of this court before they became allies in this attempt to prosecute Salemme. (Exhibit D, pages 5 through 36) It now appears that the prosecution's new argument is Flemmi suddenly is no longer engaging "in a pattern of overt lies throughout his testimony… [in which] he has rationalized past events to achieve some psychological comfort regarding his

otherwise unsavory past." Can it be plausibly, morally,

ethically and legally argued here, with a straight face no

less, that Flemmi is singularly in this matter not telling

"lies, lies and more lies" and that only here he is not

engaging in another "instance of evasion, equivocation, and

fabrication"? It is contended that Flemmi cannot possibly

and suddenly have shed his "inability to tell the truth" or

his "propensity to fabricate favorable facts." The passage

of short period of time did not change a man who has

admitted, denied and conceded murder, child molestation,

incest, torture and every violent criminal act during his

entire criminal life. To look at Flemmi's past mistakes

makes one almost certain that he was committing heinous

crimes even as a teenager. It is submitted that this grand

jury was entitled to hear of Flemmi's proven propensity to

falsely lay the blame on others when it benefits him to any

degree and to resolve any inconsistencies in his story-line

in his "typical chameleon-like fashion" as once described by

Wyshak.

These words unequivocally demonstrate that when Wyshak

presented Flemmi's testimony to the grand jury he knew it was

likely false or, at the very least, that his credibility was

highly questionable. Wyshak's belief that Flemmi was not a

credible witness is clearly stated in this written and orally

argued submission, which was authored and presented by him in

Flemmi's racketeering case. Wyshak stated in that

memorandum, which is hereby attached as Exhibit D, that

Flemmi's credibility was "highly suspect" and that his

testimony was, "[a]t best…a textbook example of evasiveness

and equivocation. More accurately stated, his testimony is

saturated with inconsistencies and fabrications." The

hypocrisy of the indictment in this case can also be seen in

another sworn submission by Wyshak's supervisor, Assistant

United States Attorney James Herbert, in an affidavit

submitted May 13, 2003 in connection with the civil action of

Stephen M. Rakes, et al., v. United States, et al. That

affidavit states in pertinent part that:

> "Flemmi is capable of abusing Federal Rules of
> Procedure, and capable of obstructing justice, in a
> variety of ways, including perjury and witness
> tampering, and is willing to do so." "This is not a
> matter of speculation…. Judge Wolf found that
> Flemmi had lied during his testimony in the 1998
> evidentiary hearings in the Salemme case….Flemmi is
> currently charged In the RICO case pending before
> Judge Stearns with having perjured himself and
> obstruction of justice during the Salemme hearings,
> and also with having tampered with evidence in the
> year 2000 bearing on the then ongoing RICO murder
> investigation and prosecution. Flemmi is also
> charged with murdering individuals …."

Accordingly, when Wyshak and Herbert have in the recent

past attacked Flemmi as a liar, a perjurer, an individual who

has no regard for the Federal Rules of Procedure and one who

is willing to obstruct justice, they should not now be
allowed to insist that this person is a credible witness to
this grand jury without further disclosure. In fact, it is
argued here that the government should be estopped from doing
so in this case. These facts clearly demonstrate that the
same prosecutor allowed the presentation of potentially and
likely false testimony before the grand jury by Flemmi, now a
government witness, in order to obtain this indictment. It
is unfair that with Wyshak's one hand he is fingering Flemmi
as a pathological and homicidal prevaricator and with the
other glad-handing him as a model citizen and upright grand
jury witness. There is really no argument to be made by the
government that such evidence was properly withheld from this
grand jury.

Perhaps the most incredible evidence that was kept from
these grand jurors was the fact that Wyshak and Assistant
United States Attorney Brian Kelly, the prosecutors in this
case, have previously prosecuted and convicted their witness
Flemmi for suborning perjury, providing false and misleading
information and corrupting grand jury witnesses James Katz
and Howard Levenson in violation of Title 18, United States
Code, Section 1512, yet did not advise this grand jury of
that fact. United States v. Stephen Flemmi, Criminal No. 94-

-7-

10287-MLW. Where is the justice? Either way, the defendant argues that this grand jury was entitled to know at least several facts about the background of Flemmi's past record as a perjurer before they weighed his testimony against Salemme in this case.

It is clear that the United States Constitution guarantees every person the right to indictment by a grand jury in connection with a federal felony charge. It has been established that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ." United States Constitution, Fifth Amendment. Justice is not obtained and dismissal is thereby required when improper conduct by the prosecutor "[s]o infect(s) the [grand jury] with unfairness as to make the resulting [indictment] a denial of the due process." Darden v. Wainright, 477 U.S. 168, 181 (1986). It is also the Court's responsibility to see that the grand jury performs its duties unimpeded even if the conduct of the prosecutor must be examined. United States v. Font-Ramirez, 944 F.2d 42, 46 (1st Cir. 1991). It is here contended that the prosecutor's conduct before the grand jury made a sham of the indictment process and accordingly denied the defendant his constitutional guarantee to due process.

Dismissal of an indictment is appropriate where, as is argued here "it is established that the violation substantially influenced the grand jury's decision to indict' or if there is rave doubt' that the decision to indict was free from substantial influence of such violations." Bank of Nova Scotia at 256, 108 S.Ct. at 2374, quoting United States v. Mechanik, 475 U.S. 66, 78, 106 S.Ct. 938, 946 (1986). See also, e.g., United States v. Morrison, 449 U.S. 361, 365-66, 101 S.Ct. 665, reh. denied, 450 U.S. 960 (1981); United States v. Merlino, 595 F.2d 1016, 1018 (5th Cir. 1979), cert. denied, 444 U.S. 1071 (1980). United States v. McKenzie, 678 F.2d 629, 631 (5th Cir.), cert. denied, 459 U.S. 1038 (1982); United States v. Acosta, 526 F.2d 670 (5th Cir.), cert. denied, 426 U.S. 920 (1976).

This Court has the inherent authority to dismiss an indictment when there has been serious and willful prosecutorial abuse of the grand jury's truth-seeking function. See, e.g., United States v. Everett, 692 F.2d 596, 601 (9th Cir. 1982); United States v. Udziela, 672 F.2d 995, 998 (7th Cir. 1982)(courts' "greater willingness to curb prosecutorial abuse of" grand jury proceedings). See also, e.g., United States v. Samango, 607 F.2d 877, 882 (9th Cir. 1979) (although grand jury need not be advised of all information bearing on witness credibility, dismissal will be

required in flagrant cases in which the grand jury has been
overreached or deceived in significant way, including
knowingly presented perjury and other prosecutorial behavior,
even unintentional, that improperly influences and usurps the
grand jury's role).

The grand jury is intended to serve as a check on
prosecutorial overreaching by injecting the involvement of
average citizens into the criminal process in its early
stages.  The grand jury has two principal functions.  First,
it must investigate crime and determine whether probable
cause exists to believe that a crime has been committed.
United States v. Mechanik, 475 U.S. 66, 73 (1986).  Second,
and more importantly, the grand jury stands as a check
between the government and its citizenry, and ensures that
indictments are brought fairly and properly. Hale v. Henkel,
201 U.S. 43, 59 (1906). See Wood V. Georgia, 370 U.S. 375,
390 (1962).  The grand jury also serves an independent
investigatory function and "is not meant to be a private tool
of the prosecutor." United States v. Fisher, 455 F. 2d 1101,
1105 (2nd Cir. 1972).

In Fisher, supra, the Court described the function of
the grand jury as follows:

> "[T]he purpose of the Fifth Amendment
> guarantee that no individual may be
> charged in federal felony cases except by

> indictment or presentment of a grand jury
> was to provide protection to those who
> would be 'held to answer', i.e.
> prosecuted, and those who are not 'held
> to answer.' The Grand Jury's mission is
> to clear the innocent, no less than to
> bring to trial those who may be guilty,
> and it is within the power of the federal
> courts to make certain the grand jury
> does serve its historic role as a
> protective bulwark standing solidly
> between the ordinary citizen and an
> overzealous prosecutor.

Therefore, the grand jury must remain "free to pursue its

investigations unhindered by external influence or

supervision so long as it does not trench upon the legitimate

rights of any witness called before it." United States v.

Dionisio, 410 U.S. 1, 17-18 (1973).

Instead of allowing it to fully and properly function in

this case, Wyshak incorrectly used the grand jury as a tool

in bringing this prosecution. In this matter, Wyshak used a

witness whom he knew to be inherently incredible to present

false information and thereby manipulated the grand jury by

withholding his history of lying and committing perjury from

them.   This abuse mandates dismissal not only to guarantee

the defendant's right to due process but additionally to send

a message to the government that such misuse of the grand

jury process will not be tolerated.   See United States v.

Flores-Rivera, 56 F. 3d 319, 328 (1st Cir. 1995). See also

Bank of Nova Scotia v. United States, 487 U.S. 250, 254
(1988).

Prosecutorial misconduct takes many forms, and as stated

in Justice Sutherland's classic opinion for the Court in

Berger v. United States, 295 U.S. 78 (1935):

> "That the United States prosecuting attorney over
> stepped the bounds of that propriety and fairness
> which should characterize the conduct of such an
> officer in the prosecution of a criminal offense is
> clearly shown by the record. He was guilty of
> misstating the facts in his cross examination of
> witnesses; of putting into the mouths of such
> witnesses things which they had not said; of
> suggesting by his questions that statements had
> been made to him personally out of court, in
> respect of which no proof was offered; of
> pretending to understand that a witness had said
> something which he had not said and persistently
> cross examining the witness upon that basis; of
> assuming prejudicial facts not in evidence; of
> bullying and arguing with witnesses; and in
> general, of conducting himself in a thoroughly
> indecorous and improper manner…"

Id., at 84-85.

Reported cases of such misconduct before the United

States Supreme Court include, but are not limited to, the

knowing use of perjured testimony, Mooney v. Holohan, supra;

the suppression of evidence favorable to an accused person,

Brady v. Maryland, 373 U.S. 83, 87-88 (1963); and

misstatements of the law in argument to the jury, Caldwell v.

Mississippi, 472 U.S. 320, 336 (1985). Other cases of such

misconduct indicate that it has sometimes infected grand jury

proceedings as well.  Such cases contain examples of

prosecutors presenting perjured testimony, United States v.

Basurto, supra; questioning a witness outside the presence of

the grand jury and then failing to inform the grand jury that

the testimony was exculpatory, United States v. Phillips

Petroleum, Inc., 435 F. Supp. 610, 615-617 (ND Okla. 1977);

failing to inform the grand jury of its authority to subpoena

witnesses, United States v. Samango, 607 F. 2d 877, 884 (CA9

1979); operating under a conflict of interest, United States

v. Gold, 470 F. Supp. 1336, 1346-1351 (ND Ill. 1979);

misstating the law, United States v. Roberts, 481 F. Supp.

1385, 1389, and n. 10 (CD Cal. 1980); and misstating the

facts on cross examination of a witness, United States v.

Lawson, 502 F. Supp. 158, 162, and nn. 6-7 (Md. 1980).

The prosecutor presenting a case to the grand jury must

be bound by strict standards of propriety.  In that regard,

Justice Sutherland also stated that:

> "The United States Attorney is the representative
> not of an ordinary party to a controversy, but of
> a sovereignty whose obligation to govern
> impartially is as compelling as its obligation to
> govern at all; and whose interest, therefore, in
> a criminal prosecution is not that it shall win a
> case, but that justice shall be done. As such, he
> is in a peculiar and very definite sense the
> servant of the law, the twofold aim of which is
> that guilt shall not escape or innocence suffer.
> He may prosecute with earnestness and vigor--
> indeed, he should do so. But, while he may strike

hard blows, he is not at liberty to strike foul
ones. It is as much his duty to refrain from
improper methods calculated to produce a wrongful
conviction as it is to use every legitimate means
to bring about a just one."

Id., at 88.

The prosecutor has the same duty to refrain from

improper methods calculated to produce a wrongful indictment,

and his duty to protect the fundamental fairness of judicial

proceedings assumes special importance when he is presenting

evidence to a grand jury. Wyshak should be held to that same

standard here. As the Court of Appeals for the Third Circuit

recognized:

"the prosecutor operates without the check of a
judge or a trained legal adversary, and virtually
immune from public scrutiny. The prosecutor's abuse
of his special relationship to the grand jury poses
an enormous risk to defendants as well. For while
in theory a trial provides the defendant with a
full opportunity to contest and disprove the
charges against him, in practice, the handing up of
an indictment will often have a devastating
personal and professional impact that a later
dismissal or acquittal can never undo. Where the
potential for abuse is so great, and the
consequences of a mistaken indictment so serious,
the ethical responsibilities of the prosecutor, and
the obligation of the judiciary to protect against
even the appearance of unfairness, are
correspondingly heightened."

United States v. Serubo, 604 F. 2d
807, 817 (1979).

In his dissent in United States v. Ciambrone, 601

F. 2d 616 (CA2 1979), Judge Friendly also recognized

the prosecutor's special role in grand jury proceedings:

> "As the Supreme Court has noted, `the Founders
> thought the grand jury so essential to basic
> liberties that they provided in the Fifth Amendment
> that federal prosecution for serious crimes can
> only be instituted by "a presentment or indictment
> of a Grand Jury." ' United States v. Calandra, 414
> U.S. 338, 343, . . . (1974). Before the grand jury
> the prosecutor has the dual role of pressing for an
> indictment and of being the grand jury adviser. In
> case of conflict, the latter duty must take
> precedence. United States v. Remington, 208 F. 2d
> 567, 573-74 (2d Cir. 1953) (L. Hand, J.,
> dissenting), cert. denied, 347 U.S. 913 . . .
> (1954)…The ex parte character of grand jury
> proceedings makes it peculiarly important for a
> federal prosecutor to remember that, in the
> familiar phrase, the interest of the United States
> `in a criminal prosecution is not that it shall win
> a case, but that justice shall be done.' Berger v.
> United States, 295 U.S. 78, 88 . . . (1935)."

Id., at 628-629.

Although the majority in Ciambrone did not agree with

the dissent's view it nonetheless recognized the prosecutor's

duty to avoid fundamentally unfair tactics during the grand

jury proceedings.  Speaking for the majority, Judge Mansfield

explained:

> "On the other hand, the prosecutor's right to
> exercise some discretion and selectivity in the
> presentation of evidence to a grand jury does not
> entitle him to mislead it or to engage in
> fundamentally unfair tactics before it. The
> prosecutor, for instance, may not obtain an
> indictment on the basis of evidence known to him to
> be perjurious, United States v. Basurto, 497 F. 2d
> 781, 785-86 (9th Cir. 1974), or by leading it to
> believe that it has received eyewitness rather than
> hearsay testimony, United States v. Estepa, 471 F.
> 2d 1132, 1136-37 (2d Cir. 1972). We would add that

- 15 -

where a prosecutor is aware of any substantial
evidence negating guilt he should, in the interest
of justice, make it known to the grand jury, at
least where it might reasonably be expected to lead
the jury not to indict. See ABA Project on
Standards for Criminal Justice--the Prosecution
Function, § 3.6, pp. 90-91."

Id., at 623.

The standard for judging the consequences of

prosecutorial misconduct during grand jury proceedings is

essentially the same as the standard applicable to trials. In

United States v. Mechanik, supra, the Supreme Court held that

there was "no reason not to apply [the harmless error rule]

to `errors, defects, irregularities, or variances' occurring

before a grand jury just as we have applied it to such error

occurring in the criminal trial itself," Id., at 71-72.

Courts have the authority to supervise the conduct of the

prosecutor in grand jury proceedings even if he or she

followed the dictates of the Constitution, applicable

statutes, and Rule 6 of the Federal Rules of Criminal

Procedure.  Although the grand jury has not been "textually

assigned" to "any of the branches described in the first

three Articles" of the Constitution, it is not an autonomous

body completely beyond the reach of the other branches.

Throughout its life, from the moment it is convened until it

is discharged, the grand jury is subject to the control of

the court.  As Judge Learned Hand recognized over sixty years

ago "a grand jury is neither an officer nor an agent of the United States, but a part of the court." Falter v. United States, 23 F. 2d 420, 425 (CA2), cert. denied, 277 U.S. 590 (1928).

The United States Supreme Court has similarly characterized the grand jury:

> "A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so."

> Brown v. United States, 359 U.S. 41, 49 (1959)

The Supreme Court has additionally recognized that it has the authority to create and enforce limited rules applicable in grand jury proceedings. For example, the Court has said that the grand jury "may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law" United States v. Calandra, 414 U.S. 338, 346 (1974); may prevent a grand jury from violating such a privilege by quashing or modifying a subpoena, Id., at 346, n. 4; issue a protective order forbidding questions in violation of the privilege, Gravel v. United States, 408 U.S. 606,

628-629 (1972); invoke its supervisory authority to
fashion and enforce privilege rules applicable in grand
jury proceedings; and may invoke its supervisory
authority to fashion other limited rules of grand jury
procedure.

The grand jury is not merely an investigatory body;
it also serves as a "protector of citizens against
arbitrary and oppressive governmental action." United
States v. Calandra, supra at 343. Explaining why the
grand jury must be both "independent" and "informed,"
the Court wrote in Wood v. Georgia, supra:

> "Historically, this body has been regarded as a
> primary security to the innocent against hasty,
> malicious and oppressive persecution; it serves the
> invaluable function in our society of standing
> between the accuser and the accused, whether the
> latter be an individual, minority group, or other,
> to determine whether a charge is founded upon
> reason or was dictated by intimidating power or by
> malice and personal ill will."

Wood v. Georgia, supra at 390.

It is unrealistic to say that the grand jury can adequately
perform this important historic role if it is intentionally
misled by the prosecutor on whose knowledge of the law and
facts of the underlying criminal investigation the jurors
rely. In United States v. Basurto, 497 F. 2d 781 (9th Cir.
1974) it was held that even when the government is unaware of

the falsity of grand jury testimony, the prosecution still has a constitutional obligation upon discovering it to inform the court, counsel and the grand jury about the false statements, and that failure to do so requires dismissal of the indictment. In Basurto, supra at 785-86, the Ninth Circuit held that the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based even partially on false and misleading material, particularly when jeopardy has not yet attached. United States v. Bracy, 566 F.2d 649 (9th Cir. 1977).

The United States Supreme Court has recognized that an indictment may be quashed on the basis of prosecutorial misconduct in cases where the government's misdeeds "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations. Bank of Nova Scotia v. United States, supra at 261. See also United States v. Mechanik, supra at 70. The government may not use false evidence to obtain a criminal conviction, Napue v. Illinois, 360 U.S. 264, 269 (1959), and deliberate deception of a judge and jury is inconsistent with the rudimentary demands of justice.

Mooney v. Holohan, 294 U.S. 103, 112 (1935). Thus, an
indictment obtained through use of false evidence, known to
be such by representatives of the Government, must fall under
the Fourteenth Amendment. Napue, supra at 269.

Once it has been established that the government
knowingly permitted the introduction of false testimony,
dismissal is virtually automatic. United States v. Wallach,
935 F. 2d 445, 456 (2d Cir. 1991) (quoting United States v.
Stofsky, 527 F. 2d 237, 243 (2nd Cir. 1975); See also Alcorta
v. Texas, 355 U.S. 28 (1957); Pyle v. Kansas, 317 U.S. 213
(1942). In this case, Wyshak knowingly presented false
evidence to the grand jury because he himself had argued
earlier in another case that his witness was a liar. In both
the Alcorta and Pyle cases, the government was required to
correct false facts introduced as evidence at trial. In the
Alcorta case, the United States Supreme Court was confronted
with a prosecutor who knowingly allowed a witness not to
volunteer what the prosecutor thought might be damaging
information and then sat mute while the witness committed
perjury. Id. at 31. In granting Alcorta's petition for a
writ of habeas corpus, the Court held that the false
impression given to the jury by the prosecutor and the
government violated Alcorta's right to due process. The
Supreme Court noted the well-established rule is that a

conviction obtained by the knowing use of perjured testimony
is fundamentally unfair, and must be set aside if there is
any reasonable likelihood that the false testimony could have
affected the decision of the jury. Clearly, the same rule
should apply to this grand jury proceeding.  In a case
arising in the Tenth Circuit, United States v. Page, 808 F.
2d 723, cert. denied, 482 U.S. 918 (1987), the Circuit Court
stated that there are "two views concerning the duty of a
prosecutor to present exculpatory evidence to a grand jury,"
Id., at 727, and concluded that the "better, and more
balanced rule" is that "when *substantial* exculpatory evidence
is discovered in the course of an investigation, it must be
revealed to the grand jury," Id., at 728 (emphasis in
original).  Here the failure to advise the grand jury that
indicted the defendant of Flemmi's long time history of
demonstrable and admitted perjury under oath in federal court
amounted to dismissible withholding of evidence that the
grand jury ought to have heard.

Additionally, the government should be estopped from
having even presented this evidence to the grand jury in the
first place. As the United States Supreme Court has
explained:

> "`[W]here a party assumes a certain position in
> a legal proceeding, and succeeds in maintaining
> that position, he may not thereafter, simply

> because his interests have changed, assume a
> contrary position, especially if it be to the
> prejudice of the party who has acquiesced in the
> position formerly taken by him.' Davis v. Wakelee,
> 156 U.S. 680, 689 (1895). This rule, known as
> judicial estoppel, `generally prevents a party
> from prevailing in one phase of a case on an
> argument and then relying on a contradictory
> argument to prevail in another phase.' Pegram
> v. Herdrich, 530 U.S. 211, 227, n. 8 (2000)."

New Hampshire v. Maine, 532 U.S. 742, 749 (2001)

Although this estoppel doctrine is equitable and thus cannot

be reduced to a precise formula or test, it has been set

forth that:

> "several factors typically inform the decision
> whether to apply the doctrine in a particular case:
> First, a party's later position must be clearly
> inconsistent with its earlier position. Second,
> courts regularly inquire whether the party has
> succeeded in persuading a court to accept that
> party's earlier position. . . . A third consideration
> is whether the party seeking to assert an
> inconsistent position would derive an unfair
> advantage or impose an unfair detriment on the
> opposing party if not estopped." Id., at 750-751
> (citations and internal quotation marks omitted).

Zedner v. United States, 126 S. Ct. 1976 (2006)

It is clear that Wyshak knowingly presented evidence

to this grand jury which he had previously asserted was

untrustworthy when he claimed that Flemmi was a pathological

liar and incapable of telling the truth. Therefore, if this

Court applied the Zedner logic to this situation it is

obvious that Wyshak is now taking an inconsistent position to

the one he had taken earlier in regard to Flemmi and his

total lack of credibility.  He also successfully argued in
that previous setting against Flemmi's motion to dismiss and
is now positing himself in an unfair position to the
detriment of Salemme if he is now allowed to argue
contrarily.  As a result, estoppel should prevent this
evidence from having been presented to the grand jury in this
matter.

    In this case, the prosecutorial misconduct in presenting
Flemmi to the grand jury despite the fact that he was known
to the government to be a perjurer so prejudiced the
defendant as to deny him a fair and impartial indictment and
amounts to a denial of due process.  It is clear that Wyshak
was concerned whether the Grand Jury would believe Flemmi's
testimony, and in order to ensure this indictment, kept from
the grand jury the background of Flemmi.  He did elicit in a
few short questions the plea, sentence and agreement of
Flemmi to testify, but little more. (Exhibit E)  It was
disingenuous to keep from the grand jury Flemmi's history as
a perjurer, his motive to "set up" the defendant as he had
done years before in the John Fitzgerald bombing and other
cases.  Instead, the government allowed Flemmi to falsely
offer his desire to save some prison time for his brother as
the motive for his testimony. Exculpatory evidence may be

- 23 -

construed to include information which would devastatingly affect the credibility of a critical government grand jury witness. See, e.g., Commonwealth v. Wilcox, 437 Mass. 33, 37 (2002) (prosecutor must disclose to grand jury evidence which "would greatly undermine either the credibility of an important witness or evidence likely to affect the grand jury's decision."). Cf., e.g., United States v. Isgro, 974 F.2d 1091, 1096 (9th Cir. 1992)(condemning government, though not upholding dismissal of indictment in particular circumstances of the case, for failing to inform grand jury that government's chief grand jury witness had previously testified under oath that defendant had not committed crime as to which indictment was sought), cert. denied, 113 S. Ct. 1581 (1993).

Prosecutorial misconduct must not be tolerated--no matter how prejudicial it may be, or how seriously it may distort the legitimate function of the grand jury simply because it is not proscribed by Rule 6 of the Federal Rules of Criminal Procedure or a statute that is applicable in grand jury proceedings. Unrestrained prosecutorial misconduct in grand jury proceedings is inconsistent with the administration of justice in the federal courts and in appropriate cases be sanctioned by the dismissal of

indictments obtained by improper methods.  Such is required
here.  It is understood that the prosecutor is not required
to place all exculpatory evidence before the grand jury
because a grand jury proceeding and that the government need
not ferret out and present all evidence that could be used at
trial to create a reasonable doubt as to the defendant's
guilt.  That does not mean, however, that the prosecutor may
mislead the grand jury into believing that there is probable
cause to indict by withholding clear evidence to the
contrary.  The Department of Justice has set forth that "when
a prosecutor conducting a grand jury inquiry is personally
aware of substantial evidence which directly negates the
guilt of a subject of the investigation, the prosecutor must
present or otherwise disclose such evidence to the grand jury
before seeking an indictment against such a person." United
States Department of Justice, United States Attorneys'
Manual, Title 9, ch. 11, ¶ 9-11.233, 88 (1988).

## CONCLUSION

In conclusion, the defendant Salemme submits that this
Court should find that Wyshak's tactics in this case served
the purpose of persuading the grand jury that a convicted
killer was testifying truthfully in making a deal to help his
brother, but did not acquaint the grand jury with all of the

- 25 -

hard evidence known to the prosecutor regarding Flemmi's propensity to lie. It is contended that it was wrong to do so since Wyshak himself had earlier argued otherwise.

Accordingly, this Court should dismiss the indictment against the defendant.

Respectfully Submitted,
**FRANCIS P. SALEMME,**
By his attorneys,

Robert A. George, Esquire
BBO # 189400
77 Newbury Street
Suite 4
Boston, Massachusetts 02116
617-262-6900

Kevin R. Reddington, Esquire
BBO 414160
1342 Belmont Street
Suite 203
Brockton, Massachusetts 02641
508-583-4280

Steven C. Boozang, Esquire
BBO # 659216
Suite LL9
450 Washington Street
Dedham, Massachusetts 02026
781-251-9991

## CERTIFICATE OF SERVICE

    I, Robert A. George, hereby certify that on December 15, 2006 that I served a copy of the foregoing Motion to Dismiss and Memorandum (Filed Under Seal) in hand upon counsel for the Government.

                                        Robert A. George, Esquire